**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-10098

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

JASHAWN R. SMITH,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

August 5, 1999

Before GARWOOD, DUHÉ, AND BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

## BACKGROUND

In May 1997, Jashawn R. Smith ("Smith) and co-defendant Latoja E. Hall ("Hall"), abducted Virginia Hope Wyatt ("Wyatt"), a 72-year-old woman, at gunpoint from a Dallas mall parking garage. The Defendants traveled north into Oklahoma in Wyatt's car, using Wyatt's credit card to purchase gas. That night, Smith told Ms. Wyatt that they were going to leave her on the side of the road so that she could be found. Smith bound Wyatt's hands and feet with duct tape. At that time, Wyatt asked if Smith had a mother, hoping that Smith would treat her more gently. Instead, Smith became upset, stated that she hated her mother, and threatened to kill Wyatt's family. The Defendants put a plastic bag around Wyatt's head, wrapping duct tape over the plastic that covered Wyatt's mouth and nose. They threw Wyatt over a guard rail and down an embankment. They then drove away.

Wyatt managed to force a hole through the plastic covering her mouth and slither up the embankment. The Oklahoma Highway patrol found her early the next morning. The Defendants reached their destination, Kansas City, that morning. Officers arrested the Defendants five days later.

Smith was charged with (1) conspiracy to commit kidnapping in violation of 18 U.S.C. § 371; (2) kidnapping in violation of 18 U.S.C. § 1201; and (3) carjacking in violation of 18 U.S.C. § 2119. Smith pled guilty to all three charges without the benefit of a plea agreement. The district court sentenced Smith to a 600 month term of imprisonment, and five years supervised release to run concurrently on each count. The court also ordered Smith to pay restitution in the amount of $1045. Smith appeals.

**DISCUSSION**

Appellant argues that the district court (1) failed to comply with Fed. R. Crim. P. 11 and (2) improperly applied the Sentencing Guidelines. We affirm in part and vacate in part.

**I.   Rule 11**

We review the voluntariness of a guilty plea de novo, see United States v. Amaya, 111 F.3d 386, 388 (5th Cir. 1997), and Rule 11 violations under the harmless error standard. See United States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993). When an appellant claims that a district court has failed to comply with Rule 11, we conduct a two-question harmless error analysis: "(1) Did the sentencing court in fact vary from the procedures required by Rule

2

11, and (2) if so, did such variance affect substantial rights of the defendant." Id. at 298.

Challenging her guilty plea, Smith argues that the district court did not question her regarding her understanding of the charges and did not conduct a personal colloquy to determine whether her plea was voluntary.

The district court did vary from the requirements of Rule 11. First, although Smith was read the indictment and the factual resume, neither document contained the elements of the crimes to which she pled. See United States v. Green, 882 F.2d 999, 1005 (5th Cir. 1989) (stating that not informing the defendant of an essential element of the offense to which he pleads violates Rule 11). Second, although Smith's counsel stated that he had reviewed the indictment with Smith and that she understood those charges, Smith did not personally inform the court of her understanding of those charges. See Fed. R. Crim. P. 11(c)(1) (stating that, before accepting a guilty plea, the district court "must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered."). Third, the district court failed to ask Smith whether her plea was voluntary or whether it was the result of force, threats, or promises. See Fed. R. Crim. P. 11 (d) (stating that the court shall not accept a guilty plea without, "by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or promises apart from the plea agreement.").

Deviations such as these do not automatically require reversal, however. See Fed R. Crim. P. 11(h). Under Johnson, we must determine whether the deviations affected Smith's substantial rights. In this case, there is no indication that the district court's non-compliance with Rule 11 affected Smith's decision to plead guilty. See Johnson, 1 F.3d at 302. At rearraignment, Smith's attorney stated that he had reviewed the indictment with her and that she understood the charges and that he was satisfied that her plea was voluntary. Smith does not challenge her attorney's assertion. Smith does not maintain that she did not understand the charges at the time she pled guilty. Instead, she contends that the district court failed to personally ensure that she understood the charges. Similarly, Smith has not shown that the district court's failure to question her about the voluntariness of her plea affected her substantial rights. She does not contend that she actually pled guilty as a result of force, threats, or promises.

## II. Application of the Sentencing Guidelines

"We review the district court's application of the Sentencing Guidelines de novo." United States v. Brown, 7 F.3d 1155, 1159 (5th Cir. 1993). The commentary to the Sentencing Guidelines "must be given controlling weight unless it is plainly erroneous or inconsistent" with the guidelines. Stinson v. United States, 113 S.Ct. 1913, 1919 (1993).

Applying grouping principles, the district court sentenced Smith under U.S.S.G. § 2A4.1, the kidnapping guideline, based on a

4

cross reference from § 2X1.1, the conspiracy guideline. The district court then considered § 2A.4.1(b)(7)(B), which requires that, in instances where another offense is committed during a kidnapping, the sentencing court must apply the "offense guideline applicable to that offense." Smith's "other offense" was attempted murder. The district court, however, did not apply § 2A2.1, the attempted murder guideline. Instead, relying on application note 5 to § 2A4.1, the district court applied § 2A1.1, the first degree murder guideline. Application note 5 provides:

> In the case of a conspiracy, attempt, or solicitation to kidnap, § 2X1.1 (Attempt, Solicitation, or Conspiracy) requires that the court apply any adjustment that can be determined with reasonable certainty. . . . [I]f an offense involved a kidnapping during which a participant attempted to murder the victim under circumstances that would have constituted first degree murder had death occurred, the offense referenced under subsection (b)(7) would be the offense of first degree murder.

Smith argues that the district court erred by applying the first degree murder guideline. The Government disagrees, contending that application note 5 is not inconsistent with subsection (b)(7)(B). Rather, it argues that note 5 provides specific guidance on how to apply the subsection in a particular circumstance. See id. at 1918 (stating that "commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice."). It notes that subsection (b)(7)(B) speaks in general terms of how to compute an offense level when some other offense is committed during a kidnapping. Note 5, on the other hand, provides specific guidance

5

on how to compute an offense level when the offense is attempted first degree murder.

In this case, we conclude that following application note 5 would violate the dictates of § 2A4.1(b)(7)(B).[1] See Stinson, 113 S.Ct. at 1918 (stating that "[i]f . . . commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline."). Section 2A4.1(b)(7)(B) directs courts to cross reference the guideline applicable to the crime the defendant actually committed. By directing courts to cross reference the first degree murder guideline in cases of attempted first degree murder, application note 5 violates the clear mandate of the guideline it interprets.[2]

The Government relies in part on United States v. Depew, 932 F.2d 324, 328-30 (4th Cir. 1991). In that case, Depew and his co-conspirator conspired to kidnap a young boy for the purpose of sexually abusing, torturing, and murdering the boy on film. Depew was convicted of conspiracy to kidnap under 18 U.S.C. § 1201(c). The district court applied the conspiracy guideline, § 2X1.1(a), then cross referenced the kidnapping guideline, § 2A4.1, applying subsection (b)(5). At that time, subsection (b)(5) stated:

---

[1]But see United States v. Stone, No. 94-50432,1995 WL 86431, at *1-2 (4th Cir. Mar. 3, 1995). In Stone, the district court cross referenced the murder guideline in a similar circumstance. Stone did not appeal his sentence on that basis and, consequently, the Fourth Circuit did not address the issue.

[2]Because we hold that note 5 is inconsistent with § 2A4.1(b)(7), we need not address whether note 5 is limited to conspiracies, solicitations, and attempts.

6

> If the victim was kidnapped, abducted, or unlawfully restrained to facilitate the commission of another offense: (A) increase by 4 levels; or (B) if the result of applying this guideline is less than that resulting from application of the guideline for such other offense, apply the guideline for such other offense.

U.S.S.G. § 2A4.1(b)(5) (1990). The district court found that the "other offense" was first degree murder and cross referenced the first degree murder guideline. Depew argued, inter alia, the district court's application of the guidelines treated him as if he had completed the kidnapping and murder.

At the time of Depew's sentencing, subsection (b)(5)(B) applied to defendants who kidnapped victims "to facilitate the commission of some other offense," directing courts to "apply the guideline for such other offense" if it would result in a higher offense level U.S.S.G. § 2A4.1(b)(5) (1990). Depew conspired to kidnap the boy to facilitate murder; therefore, the Depew court cross referenced the murder guideline. The Fourth Circuit upheld Depew's sentence, reasoning that, his intended offenses carried the same weight as actual conduct. See Depew, 932 F.2d at 330. In 1991, the Sentencing Commission amended § 2A4.1, replacing the old subsection (b)(5) with subsection (b)(7). See U.S.S.G. § 2A4.1 (1991). Subsection (b)(7)(B) applies to defendants who commit another offense during or in connection with a kidnapping, directing courts to cross reference the guideline level "applicable to that other offense." In this case, Smith committed attempted murder. The plain language of subsection (b)(7)(B) indicates that "other offense" refers to the offense that Smith actually committed.

7

## CONCLUSION

We affirm Smith's convictions. We vacate her sentence and remand for re-sentencing.

AFFIRMED in part; VACATED in part and REMANDED.